Petition for reconsideration allowed; former opinion (345 Or 350, 194 P3d 804) modified and adhered to as modified January 29, 2009

## In re Complaint as to the Conduct of

## RONALD D. SCHENCK,
*Accused.*

(OSB 05-127, 05-128; SC S054585)

202 P3d 165

Ronald D. Schenck, filed the petition for reconsideration *in propria persona.*

No appearance *contra.*

PER CURIAM

## PER CURIAM

In *In re Schenck*, 345 Or 350, 194 P3d 804 (2008), this court concluded that, in addition to four other disciplinary rules, the accused had violated Code of Professional Responsibility Disciplinary Rule 5-101(A)(1) (representation of client whose interests conflict with lawyer's self-interest). As the basis for that violation, this court concluded that the accused had a personal financial interest that either did or reasonably may have affected his professional judgment on behalf of his client. Based on that and the other violations that this court found the accused to have committed, this court suspended the accused for one year.

The accused petitioned this court for reconsideration. We allow the petition for reconsideration to correct a factual suggestion in the opinion that, we agree, is not supported by the record, at least not by clear and convincing evidence. *See* Bar Rule of Procedure 5.2 (clear and convincing evidence is the burden of proof). In all other respects, we adhere to the former opinion. As we explain below, the factual correction that we make on reconsideration does not alter our conclusion that the accused violated DR 5-101(A)(1).

The DR 5-101(A)(1) charge against the accused stemmed from his representation of a client, Stephanie Holec, in an effort to help her collect a debt owed to her, and to her sister, Rose Holec, by the Frenches. At the same time that the accused undertook to assist Stephanie and her sister to collect that debt, the accused entered into an agreement with Stephanie to renew a debt that he owed to her. That agreement provided, among other things, that the accused's debt to Stephanie would remain unsecured. However, the accused recommended to Stephanie that she obtain a trust deed to secure the Frenches' debt. To that end, the accused drafted a note for the Frenches to sign and a trust deed for them to sign and file to secure the note. The draft note contained terms requiring the Frenches to pay the sisters $75 per month. The accused also prepared a letter to the Frenches threatening legal action against them if they did not execute the note, take the deed to a title company, sign it in front of a notary, have it recorded in the county records, and then have the recorded original returned to the accused.

The accused did not recommend to Stephanie that his debt to her be similarly secured by a trust deed.

In concluding that the accused had a financial interest under those circumstances that either did or was reasonably likely to affect his professional judgment, this court reasoned:

"Whether the accused violated DR 5-101(A)(1), therefore, turns on whether his personal financial interest did or 'reasonably may have affected' his professional judgment with regard to collecting the debts that were due to Stephanie. The Bar argues that the accused's professional judgment was affected by his status as Stephanie's debtor. More specifically, it argues that '[a] disinterested lawyer in the position of advising Stephanie and Rose about collecting unpaid debts likely would have addressed the [a]ccused's debt.' The Bar urges that the accused did not advise his clients about collecting from him, but, instead, encouraged them to proceed against the Frenches. *According to the Bar, the ultimate resolution of the two debts—i.e., both the Frenches and the accused received reduced interest rates and extended loan terms, but only the Frenches were required to secure their debt with a trust deed—provides clear and convincing evidence that the accused's professional judgment was, in fact, affected.* We agree with the Bar's arguments that the accused's personal financial interest reasonably may have affected his professional judgment. The accused therefore was required to obtain Stephanie's written consent to representation under DR 10-101(B), which included recommending to Stephanie that she seek independent legal advice in that regard. He did not do so. The accused violated DR 5-101(A)(1)."

*Schenck*, 345 Or at 363-64 (emphasis added).

The accused, in his petition for reconsideration, acknowledges that the record contains evidence that the Frenches in fact began paying $75 per month, as the note drafted by the accused would have required them to do. But the accused maintains that the Frenches did not in fact sign a note obligating them to make those payments. Neither, according to the accused, did they secure the debt with a trust deed. Consequently, the accused urges that this court factually erred in stating that, "[u]ltimately, the Frenches and the sisters agreed to a new note in the amount of $8,736 at six

percent interest, secured by a trust deed on the Frenches' home." *Id.* at 354.

We did not understand the accused, in his original briefing to this court, to take issue with what the Bar had described as the "ultimate resolution" of the two debts and, more particularly, with whether the Frenches in fact executed a note for the debt and secured it by a trust deed. Instead, we understood the accused to dispute whether Stephanie was the accused's client at the time that he assisted her in collecting the debt from the Frenches. *Id.* at 362. We also understood the accused to take issue with whether his financial debt to Stephanie did or was reasonably likely to impair his professional judgment in representing her. *Id.* at 363-65. The accused did not dispute that he had threatened the Frenches with litigation if they did not sign the note and secure it with a trust deed. Neither did the accused dispute that the Frenches had made payments ($75 per month) consistently with the note that he had drafted. Thus, for purposes of our analysis, we inferred that the payments made were pursuant to an executed note secured by a trust deed.

The accused is correct, however, that the record does not contain any direct evidence that the Frenches executed the draft note and secured it with a trust deed. Now that we better understand the accused's argument in that regard, we clarify our opinion accordingly. In particular, we make no finding on whether the draft note or trust deed was ultimately executed by the Frenches. We do not do so, because a finding on that point is unnecessary to our conclusion that the accused violated DR 5-101(A)(1). In our original opinion, our conclusion that the accused committed that violation rested on the advice that he had provided to Stephanie to treat the Frenches' debt differently from his own debt. That advice, not what the Frenches did in response to the accused's efforts to collect their debt, provides the evidence from which we conclude that the accused's professional judgment on behalf of Stephanie was or was reasonably likely to be impaired. We clarify our original opinion accordingly.

The petition for reconsideration is allowed. The former opinion is modified and adhered to as modified.