370                January 19, 2018                No. 4

IN THE SUPREME COURT OF THE
STATE OF OREGON

In re Complaint as to the Conduct of
SAMUEL A. RAMIREZ,
OSB Bar No. 910883,
*Accused.*
(OSB 14116; SC S064697)

On review of the decision of a trial panel of the Disciplinary Board.

Argued and submitted on the record on November 13, 2017.

Samuel A. Ramirez filed the brief on his own behalf.

Susan Roedl Cournoyer, Assistant Disciplinary Counsel, Tigard, argued the cause and filed the brief on behalf of the Oregon State Bar.

Before Balmer, Chief Justice, and Kistler, Walters, Nakamoto, and Flynn, and Duncan, Justices.*

PER CURIAM

The accused is suspended from the practice of law for a period of one year, commencing 60 days from the date of this decision.

_____

* Landau, J., retired December 31, 2017, and did not participate in the decision of this case. Nelson, J., did not participate in the consideration or decision of this case.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (the Bar) charged Samuel A. Ramirez (the accused) with violating several Oregon Rules of Professional Conduct (RPC). A trial panel concluded that the accused had failed to provide competent representation, neglected a legal matter, represented a client when the representation involved a personal conflict of interest, and improperly settled a potential malpractice claim with an unrepresented party, in violation of RPC 1.1 (competence), RPC 1.3 (diligence), RPC 1.7 (a)(2) and RPC 1.7(b) (current client conflict of interest), and RPC 1.8(h) (current client conflict of interest, special rule), respectively. Based on those violations and an assessment of aggravating and mitigating factors, the trial panel suspended the accused from the practice of law for one year. The accused petitioned this court for review of the trial panel's decision. On review, the accused concedes that he committed the violations found by the trial panel, but asserts that the trial panel erred in (1) rejecting his argument that the disciplinary proceeding was barred by the statute of limitations set out in ORS 12.110, and (2) assessing the aggravating and mitigating factors and imposing the one-year suspension. Reviewing *de novo*, we conclude that the disciplinary proceeding was not barred by the statute of limitations, the accused violated the disciplinary rules as the trial panel found, and the appropriate sanction is a one-year suspension.

## I.   HISTORICAL AND PROCEDURAL FACTS

Although the accused concedes that he violated the Rules of Professional Conduct as the trial panel found, he disputes the sanction. Because the appropriate sanction depends on the nature of the violations, as well as the accused's conduct during the disciplinary proceedings, we begin with a statement of the historical and procedural facts. We take the facts primarily from the trial panel's findings, which the accused does not dispute.

The accused was admitted to the Oregon State Bar in 1991. His primary practice areas have been criminal defense and family law. This disciplinary proceeding was based on the accused's representation of a client, Carson

Culp. The accused obtained a money judgment for Culp, but then, over a period of years, failed to take the actions necessary to collect the unsatisfied judgment, and, when Culp complained about the accused's representation, the accused entered into an agreement with Culp to settle Culp's potential malpractice claims, without advising Culp of the desirability of seeking independent counsel.

A.   *The Culp v. Dunn and Dunn Litigation*

In 2006, the accused filed a civil action on behalf of Culp against Christine Dunn (Christine) and her mother, Elizabeth Dunn (Elizabeth), claiming that Culp had an interest in real property owned by the Dunns in Klamath County (the "Split Rail property"). The claim was based on improvements to the property for which Culp had paid.

In April 2008, the accused obtained a general judgment in favor of Culp against Christine, which included a money award of $97,552.92 and created a judgment lien. Pursuant to ORS 18.150(2)(a), the lien attached to all real property the Dunns owned in Klamath County, including the Split Rail property and a second property, the "Ranger Court property." Culp instructed the accused to collect the money award as soon as possible.

Christine appealed the judgment, and the accused represented Culp in an appellate settlement conference in August 2008. At the conference, Culp agreed to a settlement, the terms of which required Christine and Elizabeth to sign a promissory note to Culp for $80,000, payable on September 1, 2009, and to secure the note with a trust deed on the Ranger Court property.

Notably, the Ranger Court property was already encumbered. In 2006, while Culp's action concerning the Split Rail property was pending, the Dunns borrowed $65,000 from Washington Mutual Bank and secured the loan with a trust deed on the Ranger Court property. Christine executed the promissory note for the loan on behalf of herself and Elizabeth, using a power of attorney.

B.   *Collection Attempts*

In April 2009, eight months after the appellate settlement conference, Christine's lawyer, David Brown (Brown),

sent the accused a proposed form of mutual release and settlement agreement, a proposed note, and a proposed trust deed on the Ranger Court property for the accused and Culp to review. The accused did not respond to Brown or forward the documents to Culp. When Culp inquired about the documents, the accused told him that Brown had not provided them yet.

Christine did not pay the $80,000 due on September 1, 2009. Prompted by Culp, the accused wrote to Brown, asking why Christine had not executed the trust deed on the Ranger Court property. Brown replied that he was waiting for the accused to have Culp complete and return the settlement documents.

Thereafter, the accused returned the settlement documents to Brown, and Christine signed the promissory note and executed the trust deed on the Ranger Court property. Elizabeth did not sign the trust deed, and Christine did not sign it on Elizabeth's behalf. The accused recorded the trust deed in June 2010.

The accused did not inform Culp of the problems with a foreclosure that could arise because of Washington Mutual's superior interest in the Ranger Court property or because of Christine's failure to obtain Elizabeth's signature on the trust deed. Nor did he explore any other options for collecting Culp's money award.

In August 2010, the accused initiated a nonjudicial foreclosure on Culp's trust deed on the Ranger Court property; he recorded a notice of default and scheduled a sale for January 2011. Although the accused had never successfully completed a nonjudicial foreclosure, he did not review any Continuing Legal Education (CLE) materials or take any other steps to familiarize himself with the requirements for a foreclosure. He did not review the title history of the Ranger Court property or calculate the amount owed on the property. The accused failed to take the steps required by statute to complete the foreclosure; among other things, he failed to publish notice of the sale. When Culp contacted the accused to learn the outcome of the sale, the accused told him that he had forgotten to file required paperwork and the sale had not occurred. Although Culp had already paid the

accused $1,500 to conduct the sale, the accused offered to conduct another sale for an additional $1,600. Culp agreed and paid the accused.

The accused initiated the second nonjudicial fore-closure in January 2011 and scheduled a sale for May 2011. He believed he had taken the steps required by statute, but when no one appeared for the sale, he realized that, once again, he had failed to publish notice of the sale.

Although the accused's attempts to foreclose on the Ranger Court property were unsuccessful, he wrote a letter to Christine in June 2011 asserting that Culp owned the property and requiring that Christine surrender the prop-erty and that she and Elizabeth sign quitclaim deeds to Culp. At the disciplinary trial, one of the Bar's witnesses testified that the accused's demands of the Dunns exposed Culp to potential civil liability for making improper threats in connection with a foreclosure.

C.  *Settlement between the Accused and Culp; Continued Representation*

In November 2011, Culp complained to the accused about his failure to collect on the $80,000 promissory note, demanded a refund, and asserted that he had a legal mal-practice claim against the accused. After reviewing a CLE publication on torts to evaluate whether Culp had a claim against him, the accused prepared a "Termination and Settlement Agreement" and attached an "Acknowledgement of Payment," which he presented to Culp. The agreement states that the accused earned the $3,100 Culp had paid him, but that the accused agreed to pay Culp $3,100 "to settle any and all disputes arising from his representa-tion." The accused did not explain what Culp's potential malpractice claims might be or that Culp might be entitled to more than a $3,100 refund, and he did not advise Culp of the desirability of seeking independent legal counsel to review the settlement agreement. Culp did not sign the "Termination and Settlement Agreement," but he did sign the attached "Acknowledgement of Payment," which states that he received $3,100 as "payment in full pursuant to the settlement agreement."

After Culp signed the Acknowledgement of Payment, the accused continued to represent Culp in the collection matter, on a contingent fee basis. In January 2012, the accused made a third attempt to foreclose on the Ranger Court property, with a sale scheduled approximately five months later. Before the sale, the accused received notice that Washington Mutual was foreclosing on its trust deed on the Ranger Court property because the Dunns had defaulted on their loan. The accused gave the notice to Culp, but took no actions to protect Culp's interest; he told Culp that Culp would not receive anything and his interest in the property would be extinguished.

Before Washington Mutual's foreclosure sale of the Ranger Court property occurred, Christine filed a Chapter 7 bankruptcy petition and exercised her homestead exemption on the Split Rail property. The accused received notice of the petition, and he informed Culp that he did not practice bankruptcy law and that Culp would need to retain another lawyer to represent him in the bankruptcy. Culp did not consult another lawyer.

In November 2012, Christine received a "no asset" discharge, which extinguished the $80,000 promissory note. At the disciplinary trial, a witness for the Bar testified that, although the promissory note was extinguished, Culp's judgment lien against Ranger Court remained for two more years, until Washington Mutual completed its nonjudicial foreclosure and sale in 2014.

D.  *Disciplinary Proceedings*

In April 2013, Culp complained to the Bar about the accused's representation. After an investigation, the Bar filed a formal complaint in January 2015. The case was tried in October 2016.

During the trial, the accused offered into evidence a letter he wrote to Culp in November 2015, attempting to settle the disciplinary proceeding. The letter states, "As you know, the bar is looking into my representation of you regarding the Split Rail property and the Ranger Court foreclosure. I would like to attempt to resolve this matter. Please give me a call." After sending the letter, the accused

called Culp and offered him $1,000, and later $1,500, in the hope that Culp would withdraw his complaint and the Bar would dismiss the disciplinary proceeding.

In a decision issued in December 2016, the trial panel found that the accused failed to provide competent representation, neglected a legal matter, represented a client when that representation involved a personal conflict of interest, and improperly settled a potential malpractice claim with an unrepresented party, in violation of RPC 1.1 (competence), RPC 1.3 (diligence), RPC 1.7(a)(2) and RPC 1.7(b) (current client conflict of interest), and RPC 1.8(h) (current client conflict of interest, special rule), respectively. Specifically, the trial panel found that the accused violated

- RPC 1.1, "by representing Culp in a collection matter without the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation," including by making "the same mistake three times in attempting to foreclose on the property at issue[;]"

- RPC 1.3, by engaging in "a course of neglectful conduct" and demonstrating an "on-going pattern of ignorance as to the most basic laws relating to collection of a debt[;]"

- RPC 1.7(a)(2) and RCP 1.17(b), by failing to advise Culp that he had a potential malpractice claim and continuing to represent Culp, without written informed consent, after the potential claim arose; and

- RCP 1.8(h), by entering into the settlement agreement with Culp without advising Culp to seek independent counsel.[1]

The trial panel found seven aggravating factors: (1) a prior history of discipline, specifically, a 1998 reprimand

---

[1] The Bar had also alleged that the accused had failed to communicate with a client, improperly entered into a business transaction with a client, terminated representation without protecting a client's interest, and engaged in conduct involving dishonesty or misrepresentation, in violation of RPC 1.4(b), RPC 1.8 (a)(1) to (3), RPC 1.16(d), and RPC 8.4(a)(3), respectively. The trial panel found that the Bar failed to prove those violations by clear and convincing evidence.

for failing to properly handle and account for client funds and a 2009 admonishment for neglect of a legal matter; (2) a dishonest or selfish motive; (3) a pattern of misconduct, including repeated failures to correct flawed practices; (4) multiple offenses, in that the accused violated multiple rules and engaged in multiple instances of misconduct; (5) a refusal to acknowledge the wrongfulness of the charged misconduct, as evidenced by his "attempt to persuade Culp to accept money in exchange for withdrawing the Disciplinary Complaint"; (6) a vulnerable victim, because the accused knew that Culp "was not legally sophisticated, had limited resources, was impaired by alcoholism * * *, and desperately wanted [the accused] to complete collection as soon as possible[,]" and (7) substantial experience in the practice of law. As a mitigating factor the trial panel found that, "to his credit, the [a]ccused admitted his incompetence with regard to the foreclosure claim * * * [and] agreed that this incompetence warrants a suspension from practice."

Given the accused's violations and the balance of the aggravating and mitigating factors, the trial panel concluded that a one-year suspension was warranted. After the trial panel issued its order, the accused petitioned this court for review.

## II.   PARTIES' ARGUMENTS ON REVIEW

As mentioned, the accused concedes the rule violations that the trial panel found, but challenges the trial panel's decision on two grounds; he asserts that (1) the disciplinary proceeding was barred by the statute of limitations set out at ORS 12.110, and (2) that the trial panel erred in its assessment of aggravating and mitigating factors and its imposition of the one-year suspension. In response, the Bar asserts that lawyer disciplinary proceedings are not subject to any statute of limitations, and it asks this court to adopt the trial panel's findings of fact and conclusions of law regarding the violations and to suspend the accused for not less than one year.

## III.   ANALYSIS

We review the trial panel's decision *de novo. See* ORS 9.536(2) (so stating); Bar Rule of Procedure (BR) 10.6

(same). We begin our analysis by addressing the accused's argument that the disciplinary proceeding is barred by the statute of limitations set out at ORS 12.110.

A.  *Statute of Limitations*

 The accused asserts that a lawyer may raise a statute of limitations defense in a lawyer disciplinary proceeding. This court has held to the contrary, specifically stating, "The statute of limitations and latches are not defenses" in lawyer disciplinary proceedings. *In re Ruben G. Lenske*, 269 Or 146, 164, 523 P2d 1262 (1974), *cert den*, 420 US 908 (1975).

 Despite *Lenske*, the accused argues that lawyer disciplinary proceedings are subject to the statute of limitations set out in ORS 12.110(1). In support of his argument, the accused relies on ORS 9.010, which provides, in part, that the Bar is a public corporation and is subject to certain statutes applicable to public bodies, including the Oregon Rules of Civil Procedure. ORS 9.010(2), (3)(d). In addition, the accused points out that ORCP 21 A provides that a statute of limitations defense may be raised through a motion to dismiss. The accused reasons that, because the Bar is subject to the Oregon Rules of Civil Procedure and ORCP 21 A provides a procedure for raising a statute of limitations defense, a lawyer may raise such a defense in a Bar disciplinary proceeding. According to the accused, the applicable statute of limitations is ORS 12.110(1), which provides that "an action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years[.]" The accused contends that, in this case, the two-year limitations period began to run in August 2012, when he notified Culp that nothing further could be done to collect the judgment, and, consequently, the Bar's complaint, which was filed in January 2015, was time-barred.

 In response, the Bar acknowledges that ORS 9.010 (3)(d) provides that it is subject to the Oregon Rules of Civil Procedure, and that, in a civil action, those rules and any applicable statute of limitations would apply. But, the Bar contends, lawyer disciplinary proceedings are not civil

actions; rather, they are "'*sui generis* and within the inherent power of the Supreme Court to control.'" (Quoting ORS 9.529.) They are governed by the Bar Rules of Procedure, which are adopted by the Bar's Board of Governors and approved by this court. ORS 9.005(7); ORS 9.542(1) ("The board of governors, subject to the approval of the Supreme Court, may adopt rules of procedure \*\*\* relating to the conduct of \*\*\* disciplinary proceedings."). According to the Bar, because the Bar Rules of Procedure do not provide a time limitation for the initiation of disciplinary proceedings, the disciplinary proceeding against the accused was not time-barred.

We agree with the Bar. As mentioned, we have previously held that there is no statute of limitations defense in lawyer disciplinary proceedings. *Lenske*, 269 Or at 164; *see also State v. Mannix*, 133 Or 329, 336, 288 P 507, *reh'g den*, 133 Or 399, 290 P 745 (1930) (holding that the statute of limitations governing criminal prosecutions is not a defense to a proceeding for suspension or disbarment of a lawyer). The accused's argument to the contrary is unavailing. As the Bar argues, disciplinary proceedings are governed by the Bar Rules of Procedure, not the Oregon Rules of Civil Procedure. ORS 9.529; ORS 9.542(1). Furthermore, even if the Oregon Rules of Civil Procedure applied, ORS 12.110, which establishes the two-year limitations period upon which the accused relies, does not apply to disciplinary proceedings because they are not actions for injuries "to the person or rights of another"; they are proceedings to enforce professional rules. ORS 9.529 (disciplinary proceedings are "neither civil nor criminal in nature[;]. [t]hey are *sui generis*"); BR 1.3 (disciplinary proceedings "are designed as the means to determine whether an attorney should be disciplined for misconduct").

B.  *Violations*

Because we conclude that the disciplinary proceeding against the accused was not time barred, we turn to the alleged rule violations, which the Bar bears the burden of proving by "clear and convincing evidence," that is, "evidence establishing that the truth of the facts asserted is highly probable." *In re Hostetter*, 348 Or 574, 576, 238

P3d 13 (2010) (internal quotation marks omitted); BR 5.2. As mentioned, the accused concedes that he violated the Rules of Professional Conduct as found by the trial panel. On *de novo* review, we accept the accused's concession and adopt the trial panel's findings and conclusions regarding the violations.

C.   *Sanction*

Having concluded that the accused violated multiple rules of professional conduct, we turn to the question of the appropriate sanction. As mentioned, the trial panel imposed a one-year suspension. On review, the accused disputes certain findings by the trial panel; specifically, he disputes the panel's finding that his foreclosure attempts failed because he "made the identical mistake three times," and its finding that his November 2015 letter to Culp to resolve the disciplinary proceeding "demonstrates that the [a]ccused does not accept or appreciate that his conduct toward Culp was dishonest and self-serving." In addition, the accused asserts that the trial panel erred in failing to treat the delay in the disciplinary proceeding as a mitigating factor. According to the accused, a proper sanction would be either probation or a suspension for between 30 and 90 days.

1.   *Analytical framework*

To determine the appropriate sanction for violations of disciplinary rules, "we begin with the analytical framework set out in the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards)". *In re Jaffee*, 331 Or 398, 408, 15 P3d 533 (2000); *see Hostetter*, 348 Or at 594, (following *Jaffee*). "Under that framework, we arrive at an initial presumptive sanction based on: (1) the ethical duty violated, (2) the lawyer's mental state, and (3) the actual or potential injury caused." *Jaffee*, 331 Or at 408; ABA Standard 3.0. We then determine whether any aggravating or mitigating factors justify either an increase or decrease in the sanction. ABA Standard 9.1; *Jaffee*, 331 Or at 408-09; *In re Kluge*, 335 Or 326, 348, 66 P3d 492 (2003). Finally, we determine whether the sanction is consistent with our case law. *Jaffee*, 331 Or at 409. "In determining the appropriate sanction, our purpose is to protect the public and the administration of justice

from lawyers who have not discharged properly their duties to clients, the public, the legal system, or the profession." *In re Renshaw*, 353 Or 411, 419, 298 P3d 1216 (2013); ABA Standard 1.1.

## 2. *Duties violated, mental state, and injury*

Regarding the duties violated, we conclude that the accused violated his duties to his client. Specifically, he violated his duties to represent Culp with competence and diligence and to avoid conflicts of interest. Those duties are among the most basic and important duties a lawyer owes a client. *See In re Knappenberger*, 338 Or 341, 356, 108 P3d 1161 (2005) ("A lawyer's most important ethical duties are those owed to clients, including the duty to avoid conflicts of interest.") (*Knappenberger I*); ABA Standards 4.3, 4.4, 4.5.

We next consider the accused's mental state when he committed the violations. A lawyer acts "knowingly" when the lawyer acts with "the conscious awareness of the nature or attendant circumstances of [the lawyer's] conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards at 7. A lawyer acts "intentionally" when the lawyer acts with "the conscious objective or purpose to accomplish a particular result." *Id*. We find that the accused knowingly violated RPC 1.1, governing competence, when he represented Culp in the collection matter, with the conscious awareness that he lacked the competence to do so. We also find that the accused knowingly violated RPC 1.3, governing diligence, when he neglected the collection matter over several years, despite Culp's requests and inquiries. We further find that the accused knowingly violated RPC 1.7(a), governing current conflicts of interests, when he continued to represent Culp in the collection matter after Culp had a potential malpractice claim against him, without first informing Culp of his potential claim and obtaining Culp's consent, in writing, as required by RPC 1.7(b)(4). Finally, we find that the accused acted intentionally when he violated RPC 1.8(h), by acting to limit his liability for malpractice through the Culp release, without advising Culp of the desirability of independent counsel and affording him the opportunity to obtain such counsel; the accused acted with the conscious

goal of securing a release that protected his own interests over Culp's. Thus, all of the accused's violations were either knowing or intentional.

As to the injury attributable to the accused's violations, we conclude that the accused caused Culp actual injury. ABA Standards at 7.[2] Although Culp retained the accused to collect his $97,000 judgment against Christine and paid the accused $3,100 to do so, the accused's incompetent and neglectful representation resulted in the loss of Culp's ability to collect any of the money Christine owed him. In addition, the accused injured Culp by inducing him to sign a release that the accused intended would cover Culp's potential malpractice claims against the accused.

### 3. *Presumptive sanction*

Having identified the duties violated, the accused's mental state, and the injuries caused, we next determine the presumptive sanction under the ABA Standards. *Jaffee*, 331 Or at 408; ABA Standard 3.0. Under the ABA standards, the presumptive sanction for the accused's knowing violations of his duties of competence, diligence, and loyalty is suspension. ABA Standard 4.52 (suspension generally appropriate when lawyer engages in the practice of law in an area in which he knows he is not competent and causes injury or potential injury); ABA Standard 4.42 (suspension generally appropriate when lawyer knowingly fails to perform services for a client, or engages in a pattern of neglect, thereby causing injury or potential injury to the client); ABA Standard 4.32 (suspension generally appropriate when lawyer knows of, but does not disclose, a conflict of interest and causes injury or potential injury to the client).

### 4. *Aggravating and mitigating factors*

To determine whether a sanction other than suspension is appropriate, we consider any aggravating or mitigating factors. *Jaffee*, 331 Or at 408-09. As aggravating factors, the trial panel found, *inter alia*, that the accused has a prior history of discipline, acted with a dishonest or

---

[2] "Injury" is "harm to a client, the public, the legal system or the profession which results from a lawyer's misconduct." Injury may be actual or potential. ABA Standard 3.0.

selfish motive, committed multiple offenses, took advantage of a vulnerable person, and had substantial experience in the practice of law. ABA Standard 9.22(a), (b), (d), (h), (i). The accused does not dispute those factors, and we adopt the trial panel's findings and conclusions regarding them.

The accused appears to dispute, in part, the trial panel's finding that he engaged in "a pattern of misconduct." ABA Standard 9.22(c). The trial panel found that,

> "[o]ver the course of more than five years (2008-2013), the Accused did virtually nothing to advance his client's only objective—collection of the debt owed to him. Instead, the Accused repeated flawed and inadequate processes and procedures, without attempting to correct his practices or learn from his failed efforts."

Later in its opinion, the trial panel stated that the accused admitted that he "made the identical mistake three times in attempting to foreclose on the [Ranger Court] property[.]" On review, the accused asserts that the attempts failed for different reasons; specifically, he asserts that the first attempt failed because he did not properly provide notice to the parties, the second attempt failed because he did not provide the required public notice, and the third attempt failed because Washington Mutual initiated its own foreclosure.

We find that, regardless of whether the accused repeated the identical mistake in his foreclosure attempts, he repeatedly failed to learn and comply with the basic requirements for foreclosure. Based on the accused's repeated neglect and incompetence in the collection matter, combined with his violation of the Rules of Professional Conduct governing conflicts of interest and his prior admonishment for neglect of a legal matter in another case, we conclude that the accused engaged in a pattern of misconduct. *See In re Redden*, 342, Or 393, 397, 153 P3d 113 (2007) (observing that this court has found a pattern of misconduct in cases where the accused engaged in similar misconduct in the past or violated multiple disciplinary rules).

The accused also disputes the trial panel's finding that he refused to acknowledge the wrongful nature of his conduct. ABA Standard 9.22(d). In support of that finding, the trial court relied on the accused's contacts with Culp

during the disciplinary proceeding. As described above, in November 2015, after the Bar issued its formal complaint against the accused, the accused sent Culp a letter, which states, "As you know, the bar is looking into my representation of you regarding the Split Rail property and the Ranger Court foreclosure. I would like to attempt to resolve this matter. Please give me a call." Thereafter, the accused offered Culp $1,000, and later $1,500, in the hope that Culp would withdraw his Bar complaint. During the disciplinary trial, the accused introduced a copy of the November 2015 letter, as an exhibit in his own defense. He also testified that his offer to pay Culp was an attempt to respond to Culp's concerns, in the hope that Culp would withdraw his complaint or that the Bar would view his offer to pay Culp as an attempt at restitution and treat it as a mitigating factor.

The trial panel found that the accused's contacts with Culp during the disciplinary hearing established that the accused did not appreciate the wrongful nature of his conduct. On review, the accused disputes that finding. He points out that, as the trial panel found, he "admitted his incompetence with regard to the foreclosure claim." He also renews his contention that his offer to pay Culp during the disciplinary hearing was an attempt at restitution. The Bar takes a different view of the accused's offer to pay Culp, contending that the accused was attempting to secretly manipulate Culp and undermine the disciplinary proceeding.

On review, we conclude that the evidence is insufficient to establish that the accused has refused to acknowledge the wrongfulness of his conduct. Throughout the proceedings, the accused has admitted that his foreclosure efforts were incompetent, and, on review, he has expressly conceded that he violated the Rules of Professional Conduct, as the trial panel found. His contacts with Culp during the disciplinary proceeding do not reflect a refusal to acknowledge the nature of his past misconduct. Moreover, we cannot conclude that those contacts, which the accused believed were mitigating, were not intended to be attempts at restitution.

Finally, the accused asserts that the delay in the disciplinary proceedings is a mitigating factor. As mentioned,

Culp contacted the bar about the accused in November 2013, and the Bar filed its formal complaint in January 2015. The trial was held in October 2016, and the trial panel issued its decision in December 2016. The Bar asserts that, given the investigation, discovery, motions, and pretrial proceedings, the delay, while lengthy, was not unreasonable. A lengthy period of time between misconduct and a disciplinary decision can be a mitigating factor, if there has not been further misconduct by the accused. *See, e.g., In re Cohen*, 330 Or 489, 504, 8 P3d 953 (2000) (so stating and finding that four-year delay was a mitigating factor, where the parties agreed that no complaints had been filed against the accused since the time of the charged misconduct). The accused asserts that there have been no new complaints against him, but the Bar responds that the accused's efforts in 2015 to pay Culp to resolve the disciplinary proceeding constitute misconduct, and therefore the delay should not be treated as a mitigating factor. Even assuming that delay is a mitigating factor in this case, the mitigating factors are substantially outweighed by the aggravating factors.

5. *Duration of sanction*

To determine the appropriate length of the suspension, we turn to our case law for guidance. *In re Obert*, 352 Or 231, 262, 282 P3d 825 (2012); *Hostetter*, 348 Or at 603 (although case matching in lawyer discipline cases is an "inexact science," the court's case law can "provide some guidance" (internal quotation marks omitted)). Given the facts of this case, we look to other cases that also involved multiple violations and numerous aggravating factors. We find two cases, *In re Knappenberger*, 340 Or 573, 135 P3d 297 (2006) (*Knappenberger II*), and *In re Altstatt*, 321 Or 324, 897 P2d 1164 (1995), *cert dismissed*, 517 US 1129 (1996), particularly instructive.

In *Knappenberger II*, this court imposed a one-year suspension on a lawyer who neglected a legal matter for several years. Knappenberger represented a client in a marital dissolution proceeding, and the dissolution judgment provided that his client was to receive one-half of her former husband's pension, through a qualified domestic relations order (QDRO). Despite repeated inquiries from his

client, opposing counsel, and the pension administrators, Knappenberger did not finalize the QDRO until eight years after entry of the dissolution judgment. This court held that Knappenberger violated the then-current rule governing neglect and that, although he ultimately finalized the QDRO, he had caused actual harm to his client, "in the form of anger, fear, and frustration arising out of [his] failure to act[,]" and that he caused her potential injury because his neglect put her "eligibility for benefits *** at risk," until the QDRO was finalized. 340 Or at 583-84. As aggravating factors, we found that Knappenberger had been previously disciplined and had substantial experience in the practice of law. *Id.* at 584-85. As mitigating factors, .we found that he had not acted with a dishonest or selfish motive and had fully cooperated with the disciplinary proceeding. *Id*. at 586. Considering the violations and the aggravating and mitigating factors, we concluded that a one-year suspension was appropriate. *Id*. at 588.

        In *Altstatt*, the lawyer borrowed money from a client for several years. After the client's death, the lawyer represented the personal representatives of that client's estate, but did not disclose his conflict of interest and convinced the personal representatives to delay collection of his debt until the estate closed. This court found that Altstatt's conduct violated the then-current disciplinary rule governing personal conflicts of interest. Based on other conduct, this court found that Altstatt also accepted payment of a fee without prior court approval. As aggravating factors, this court found that Altstatt acted with a selfish motive, was indifferent to making restitution, engaged in deceptive practices in the disciplinary proceeding, and had substantial experience in the practice of law. As a mitigating factor, this court found that he had no prior disciplinary violations. Considering Altstatt's conduct and the aggravating and mitigating factors, this court concluded that a one-year suspension was appropriate. 321 Or at 339. *See also In re Schenck*, 345 Or 350, 372, 194 P3d 804 (2008), *modified on recons*, 345 Or 652, 202 P3d 165 (2009) (imposing a one-year suspension on lawyer who, among other violations, renegotiated his personal debt to the client, without advising the client to seek independent counsel).

Like *Knappenberger II*, this case involves years of neglect of a legal matter by a lawyer with substantial experience and a history of discipline. This case also involves, like *Altstatt*, a personal conflict of interest and a selfish motive.

The accused asserts that a sanction of between 30 and 90 days is appropriate, relying on *In re Spencer*, 355 Or 679, 330 P3d 538 (2014), and *In re Jagger*, 357 Or 295, 348 P3d 1136 (2015). In *Spencer*, this court held that a 30-day sanction was appropriate, where, during the course of a lawyer's legal representation of a client, the lawyer also served as the client's real estate broker, and, thereby, entered into a business transaction with a client, but did not obtain the client's informed consent in writing, as required by RPC 1.8(a). 355 Or at 689. In so holding, we explained that the case involved "a single violation" and, "unlike most cases" involving violations of the business transaction rule, "the accused's misconduct did not involve nondisclosure or lack of consent regarding a financial transaction in which the accused's role was directly adverse to or intertwined with the client's[.]" *Id.* at 701-02. In *Jagger*, the lawyer facilitated telephone contact between his client and his client's girlfriend, who had a restraining order against the client. Based on that single act, which violated RPC 1.1 (competence) and RPC 1.2(a) (assisting a client in illegal conduct), we concluded that a 90-day sanction was appropriate. 357 Or at 298.

The accused's misconduct at issue in this disciplinary proceeding is readily distinguishable from that in *Spencer* and *Jagger*. Unlike those cases, this case does not involve a single violation; it involves multiple, repeated violations over a long period of time. Moreover, unlike *Spencer*, the accused's interests were directly adverse to Culp's when he settled the potential malpractice claim.

Given the accused's multiple violations in this case, each of which was knowingly or intentionally committed; the extended time period over which the violations occurred; the substantial injury caused to Culp; the multiple aggravating factors, including the accused's selfish motive and Culp's vulnerability; and the limited mitigating factors, we conclude that a lengthy sanction is appropriate. Therefore,

we agree with and adopt the one-year suspension imposed by the trial panel.

The accused is suspended from the practice of law for a period of one year, commencing 60 days from the date of this decision.